UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RONALD HARDY, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 1:07cv00415 |
| | ) | Judge Richard Roberts |
| DISTRICT OF COLUMBIA, | ) | |
| et al. | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT ODIE
WASHINGTON AND STEVEN SMITH'S MOTIONS TO DISMISS**

COME NOW the plaintiffs, Martell Legrand and Denis B. Garcia[1] and oppose the

Motions of defendant Odie Washington and Steven Smith to Dismiss plaintiffs' Complaint[2] and

for reasons state as follows:

It should be noted that the Motions to Dismiss appear to address only the official-capacity

of defendants Washington and Smith who have also been sued individually. Thus, as plaintiffs

view defendants' motions, they are not seeking dismissal of either defendant Washington or

Smith individually. Should the Court deem defendants' motions to encompass a request to

dismiss Washington and Smith individually, the plaintiffs respectfully request that this

opposition be construed as opposing such a request to dismiss Washington and Smith

individually.

---

[1] Plaintiff Ronald Hardy has resolved his claims with CCA and will be dismissing his claims as to all defendants.
[2] The Motions of Defendants Washington and Smith are identical and will be opposed in one Opposition applicable to both.

The motions have been filed before the parties have even appeared before this Honorable Court for the Initial Conference.  It is respectfully submitted that many of the issues in the plaintiffs' Complaint are factually based and require discovery.

## ARGUMENT

A.    <u>Standard of Review</u>

The District glosses over the legal standard governing review of Rule 12(b)(6) motions. In *Conley v. Gibson*, 355 U.S. 41 (1957), the court stated:

> "[W]e follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it* appears beyond doubt that the plaintiff can prove no set of facts in support of his claim *which* would entitle him to relief."  *Id. at* 45-46.

In reversing a Rule 12(b)(6) dismissal *Conley* held that:

> "[A]ll the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests . . . *Id*. at 47-48.

This "notice pleading" standard has been defined by many other courts: "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . exceedingly low.  *Ancata v. Prison Health Services, Inc.* 769 F.2d 700, 703 (11th Cir. 1985) citing *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Devel.*, 711 F.2d 989, 995 (11th Cir. 1983).  When a court reviews the sufficiency of a complaint before any discovery or the reception of any evidence, its task is limited and the issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to conduct discovery and offer evidence in support of its claims. *Scheuer v. Rhodes,* 416 U.S. 232 (1974).

In making a determination whether the claimants are entitled to proceed with their claims, the court must view the facts and allegations set forth in the complaint in the light most favorable to the plaintiffs, and generally accept as true plaintiffs' factual allegations. *Auto World, Inc. v. District of Columbia*, 627 A.2d 11 (1993).

Accordingly, unless the record demonstrates beyond doubt that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief, a dismissal under Rule 12(b)(6) will be reversed and remanded. *Gotcher v. Wood,* 66 F.3d 1097 (9th Cir. 1995).

A complaint need only provide sufficient information to place the defendants on notice of the allegations against them. "A complaint is sufficient so long as it fairly puts the defendant on notice of the claim against [it]; accordingly, liberal rules of pleading normally protect a plaintiff from dismissal at the pleading stage when the complaint can be said to state a claim if all inferences are drawn in the plaintiff's favor. *Duncan v. Children's National Medical Center*, 702 A.2d 207 (App. DC, 1997).

Plaintiffs' allegations as to defendants Washington and Smith are legally sufficient to survive a Rule 12(b)(6) Motion to Dismiss when measured by these standards.

B.    <u>Factual Allegations Within the Complaint</u>

The Defendants Smith and Washington assert that they have been sued only in their official capacity. Both the caption and paragraphs 7 and 8 of the Complaint (See Exhibit 1), however, demonstrate that each defendant has been sued "in both his official capacity and individual capacities". The Complaint continues with approximately seventeen pages of factual background and history concerning the Central Detention Facility (D.C. Jail). Defendants Washington and Smith were at the top of the chain of command during the events described in

paragraph 30 (pp. 12 through 19) (See Exhibit 2).  Moreover, on page 18 (paragraph denoted as "n") plaintiffs allege both defendant Washington and Smith attended hearings held by the D.C. City Council on March 1, 2004 dealing with continuing indifference to security at the Jail and injuries and damages being suffered by the inmates housed at the facility.  Further factual allegations supporting claims against each defendant are set forth in paragraph 31.  Within one day of the Council hearing attended by each of the defendants, plaintiff Denis Garcia suffered his injuries and damages, and under precisely the circumstances alleged in the complaint.   These conditions still had not been rectified when Mr. Legrand was attacked on January 19, 2005.

It is respectfully submitted that these allegations are sufficient to defeat the presently pending Motions to Dismiss.

C.     Legal Basis for Denial of Motions to Dismiss

In the case of *Beale, et al. v. District of Columbia,* Civil Action No. 04-959 (RMU) defendants Odie Washington and Steven Smith sought a Protective Order from Judge Urbina precluding further discovery.  A key argument propounded by these same defendants was that they were entitled to qualified immunity.  In document number 34, Judge Urbina issued a Memorandum Order (See Exhibit 3) denying the defendants' request for a Protective Order halting discovery.  In the instant case, discovery has not even commenced.

Plaintiffs' opposition in *Beale* is applicable to the presently pending Motions to Dismiss. In *Beale*, at pages 10 and 11 (See Exhibit 4) plaintiffs made virtually the same allegations, defendants responded with virtually the same defenses, and the Court denied the defendants' motion, without prejudice, until after discovery.  Qualified immunity raises precisely the type of fact-specific questions about reasonableness and good faith that are the subject of and for discovery.  In the instant case, no discovery has yet been commenced.  The facts and

circumstances known to each defendant and the measures taken to protect inmates under their care, safekeeping and protection are issues to be developed through discovery. They are not purely legal issues but rather fact driven matters.

In *Johnson v. Jones,* 515 U.S. 304, 316 (1995) the Supreme Court indicated the factual controversies in Constitutional tort cases concerning a defendant's intent are properly resolved at trial.

Judge Urbina in *Polk v. District of Columbia*, 121 F.Supp.2d 56, 65 (D.D.C. 2000) indicated that issues of reasonableness and good faith on the part of defendants presented questions of fact for a jury. Once again, the defendants have moved to dismiss before factual discovery has even commenced.

Among the theories asserted against the two defendants are they possessed complete knowledge of the long history of Constitutional violations at the D.C. Detention Facility and of current (within one day of Mr. Garcia's injuries) continuing security problems leading to inmate injuries. In *Prokey v. Watkins*, 942 F.2d 67, 73 (1st Cir. 1991) summary judgment was denied where historical knowledge of government actors was genuinely in dispute. This holding was recently affirmed by the First Circuit in *Jennings v. Jones*, 479 F.3d 110 (1st Cir. 2007).

## CONCLUSION

It is respectfully submitted that to grant the defendants' Motions to Dismiss would constitute legal error based on the allegations contained in the Complaint which are more than sufficiently presented and if believed by the trier of fact would sustain a Constitutional cause of action.

Respectfully submitted,

SAMUEL M. SHAPIRO, P.A.


___/s/_____
Samuel M. Shapiro #176420
200-A Monroe Street, #233
Rockville, MD 20850
(301) 340-1333


SPARKS & SILBER, LLP


__/s/_____
Douglas R. Sparks #296921
3221 M Street, N.W.
Washington, D.C. 20007
(202) 338-0687

Attorney for Plaintiffs


Electronically filed on: June 15, 2007

the purpose of housing pretrial detainees and other persons who have been sentenced under the laws of the District of Columbia. Its employees and agents act under color of law in all activities with respect to the incarceration of prisoners at the Central Detention Facility.

7.    Defendant Odie Washington was the Director of the D.C. Department of Corrections and held that position at all relevant times. Defendant Washington is sued in both his official capacity and individual capacities.

8.    Defendant Steven A. Smith was Warden at the Jail at the time of the attacks on Messrs. Garcia and Legrand. Defendant Smith is sued in both his official capacity and individual capacities.

9.    Defendant Prison Realty Trust, A/K/A Corrections Corporation of America (hereinafter "CCA"), is a foreign corporation with its principal place of business in Tennessee, doing business in Washington, D.C. It operates the Correctional Treatment Facility (hereinafter "CTF") located at 1901 E Street, SE Washington, DC 20003. Its employees and agents act under color of law in all activities with respect to the incarceration of prisoners at the CTF Facility.

### III. Factual Allegations

4

did not allow for constant supervision of inmates when they were outside of their assigned cells (p. 37);

vi.  staffing in open areas that was insufficient to provide appropriate observation of inmates (p. 38); and

vii. the absence of closed circuit televisions, which were a necessity for adequate supervision and security because of the design of the facility, in many areas that were not visible to the officers (p. 67).

29.  In 1997, a follow-up report (Assessment of the District of Columbia Department of Corrections), which was funded by the Federal Bureau of Prisons and conducted by the National Institute of Corrections, again highlighted dangerous security deficiencies at the Jail:

a) the absence of a classification system for pretrial detainees, who were the majority of the inmates (p. 65); and

b) the DOC's failure to adopt the new classification forms and procedures or implement any of the other recommended tasks, but rather to continue to operate under its antiquated classification system established in 1987 (p. 66).

30.  In the three (3) years leading up to the assaults on the plaintiffs herein – at the same time that District officials were successfully seeking to persuade the Court to lift the population cap imposed by *Campbell* and subsequently increasing the number of inmates by nearly 40% – urgent warnings to District officials about life-threatening conditions at the Jail became more frequent and ominous:

a) **April 13, 2001** –William H. Dupree, chairman of the Fraternal Order of Police Department of Corrections Labor Committee, wrote to Odie Washington, Director of the DC Department of Corrections, that the administration's plan to "increase the inmate population at the DC Jail...while simultaneously eliminating security posts and decreasing the work force...will present a major risk to the safety of...inmates confined at that facility."

b) **September 29, 2001** – A study (District of Columbia Department of Correction Staffing and Overtime Assessment) prepared by Security Response Technologies, Inc. warned that the District must "implement the proposed critical minimum staffing complement as the CDF's base roster of mandatory posts." (p.2)

c) **November 9, 2001** – Mr. Dupree wrote to Mayor Williams concerning "an urgent safety and security matter at the DC Jail.... The Department of Corrections is in the process of implementing a very irresponsible plan that not only violates the Court ordered ceiling at the DC Jail, but compromises the safety of both staff and inmate populations."

d) **November 12, 2001 -** James F. Wallington, Esquire, an attorney representing the Fraternal Order of Police Department of Corrections Labor Committee wrote to the Special Officer requesting assistance in seeking "a temporary restraining order directing the Office of the Mayor...and the Director of the DC Department of Corrections to cease the intentional overcrowding at the DC Jail. As of Sunday, November 11, 2001, the Department of Corrections has failed to increase the correctional officer staff at the DC Jail to address the immediate influx of inmate population."

e) **November 14, 2001 -** Correctional Officer Irving Robinson, who was assigned to the DC Jail, wrote that "it is my observation that the overcrowded conditions at the DC jail poses an immediate threat to staff and inmates."

f) **November 16, 2001 -** Mr. Dupree swore in an affidavit that "again the Department has deceived the employees of the Department of Corrections and their representatives in a matter which clearly places the health and safety of employees and the public at risk...based upon my experience as a correctional officer, I am of the opinion that these overcrowding

14

conditions will only get worse and lead to serious injury or death...."

g) **May 21, 2002** - The Special Officer reported that DOC Director Washington, in a March 25, 2002 Declaration, filed with the Court, represented that all posts on the "Critical Staffing Complement" would be filled at all times. However, according to shift rosters, cellblocks with an inmate population of 100 inmates or greater were not consistently staffed with three (3) officers. (p.5-6)

h) **June 4, 2002** - The Special Officer reported that "According to the shift rosters and the cellblock logs, there have been numerous instances when cellblocks containing greater than 100 inmates have not been assigned three (3) officers.... I feel strongly that the Department of Corrections should adhere to its representations made in the Declaration filed with the Court."(p.5)

i) **November 13, 2002** - Pamela Chase, Chairperson of the Fraternal Order of Police Department of Corrections Labor Committee testified at an Oversight Hearing of the DC Department of Corrections that staffing shortages had created "reoccurring breaches in public safety and embarrassing incidents within the

Department of Corrections.... Essential equipment
and staffing have been sacrificed...placing lives at
risk and immediate action must be taken."

j) **November 26, 2002** –   The Honorable Kathleen
Patterson, the District of Columbia City Council
Judiciary Committee chairperson, and Ward 6
Councilmember Sharon Ambrose, wrote to Mayor
Williams, stating in part as follows: "We are very
concerned that the conditions appear to be
worsening...at the DC Jail due to overcrowding....
In sum, we fear for the physical safety of inmates,
staff and the public at large."

k) **December 11-14, 2002** – The problems at the Jail
culminated in two murders and a third near-fatal
stabbing over a four day span in December 2002.  On
December 11, 2002 while incarcerated in the
Southeast One cellblock at the Jail, Givon Pendleton
was brutally attacked by inmate Dominic Jones. Jones
stabbed Mr. Pendleton repeatedly with a metal
weapon, believed to be a street knife, that likely
had been smuggled into the institution.    Mr.
Pendleton died from his injuries.

On December 13, 2002, a second inmate –
plaintiff Bradley Raymond Autman (a military veteran

16

with a prosthetic leg) — was stabbed in the neck by another prisoner at the Jail. Mr. Autman survived the attack, although he sustained serious injuries. On December 14, 2002, a third inmate - Mikal Gaither - was stabbed at the Jail. Like Mr. Pendleton, Mr. Gaither died from injuries he sustained in the attack.      The circumstances  surrounding  the  stabbings  of  Messrs. Pendleton, Autman, and Gaither were remarkably similar to one another and followed a well-documented pattern of inmate violence at the Jail. Both Messrs. Pendleton and Gaither were pretrial detainees who were murdered by predatory inmates with histories of aggravated violence against other inmates, and while both assailants   were being preventively detained on murder charges. Each stabbing took place outside the presence or sight of any correctional officer in a cellblock, overcrowded with misclassified inmates, and after one of the critical officers assigned to the housing unit had abandoned his security post without first securing a relief officer.

1) **October 26, 2003 -**      Marquee Venable (the inmate who eventually assaulted   plaintiff Denis Garcia) assaulted an inmate by throwing scalding liquid at him    while the inmate was sitting in his cell. The   liquid  had  been  heated  in  the  unsupervised

17

microwave in the Northwest Two cellblock at the DC Jail. The inmate suffered first and second degree burns to his face, neck, and scalp.

m) **December 20, 2003** - Shooting of four inmates in the maximum security cellblock unit, with a gun that had been smuggled into the D.C. Jail. A guard was at lunch during the incident.

n) **March 1, 2004** - Testimony at a D.C. Council Oversight Hearing for the D.C. Department of Corrections that identified continuing indifference to security at the jail. "In every major stabbing and shooting receiving publicity since December 2002, no correctional officer saw or heard it. And each of these incidents occurred when a prison guard had abandoned his or her post in the housing unit, after superiors sent no relief guard to replace them. During October, November & December 2003, most assaults at the jail continued to be unwitnessed and undeterred by staff. The majority occurred when housing unit posts were left unstaffed." Director Odie Washington and Warden Steve Smith attended this hearing, and listened to these warnings.

31. The overcrowding, understaffing, and substantial and unreasonable risk to detainee and inmate safety described above became known to the highest policymakers in the District government and to corrections officials through court orders, studies, technical and expert reports that were provided to the District, testimony and documents generated at City Council oversight hearings, lawsuits filed against the District and CTF, settlements entered into by the District, adverse verdicts delivered against the District by juries, a long line of inmate assaults at the Jail, and by other means. These documents and events clearly established to defendants the constitutional requirements for conditions at the Jail. Despite their longstanding awareness of the conditions of confinement at the Jail and the clearly established constitutional requirements for the facility, defendants adopted a custom or policy with respect to the operations of the Jail that was deliberately indifferent to, and recklessly disregarded, the safety and security of the detainees and inmates housed there. Defendants' actions caused a substantial and unreasonable risk to inmate and detainee safety.

32. Against this backdrop, on or about March 2, 2004, while incarcerated in the Southwest One cellblock at DC Jail, **Denis Garcia** was assaulted by Marquee Venable, who threw scalding liquid at him while Mr. Garcia was locked in his cell.

19

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PEARL BEALE *et al.*,                         :
                                              :
                    Plaintiffs,               :        Civil Action No.:    04-959 (RMU)
                                              :
            v.                                :        Document No.:        34
                                              :
THE DISTRICT OF COLUMBIA *et al.*,            :
                                              :
                    Defendants.               :

## MEMORANDUM ORDER

### DENYING THE DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

### I. INTRODUCTION

This case involves a lawsuit brought by the plaintiffs following the stabbing of Givon

Pendleton and Bradley Autman at the D.C. Jail in December, 2002. Before the court is the

defendants' motion for a protective order. The defendants claim that they are entitled to a

protective order from fifteen depositions pending a ruling on the defendants' motion for

judgment on the pleadings and/or for summary judgment ("Motion for Judgment"). Because the

defendants have failed to demonstrate that a clearly defined and serious injury would occur

absent protection, the court denies the defendants' motion for a protective order. In the interests

of judicial economy, however, the court limits the present scope of discovery to information

relevant to the defendants' pending Motion for Judgment.


### II. DISCUSSION

Protective orders are issued for good cause shown and to prevent annoyance,

embarrassment, oppression, undue burden, or expense. FED. R. CIV. P. 26(c). A motion for a

1

protective order usually follows the movant's unsuccessful attempt and both parties' good faith

efforts to resolve the matter. *Id.* The moving party bears the burden of showing that there is

good cause for the issuance of the order. FED. R. CIV. P. 26(c). Since such a motion limits the

liberal discovery rules, "good cause" is only established when the movant demonstrates that

disclosure would cause a clearly defined and serious injury. *Glenmede Trust Co. v. Thompson,*

56 F.3d 476, 483 (3d Cir. 1995). A district court may not grant a protective order without a

showing of good cause. *EEOC v. Nat'l Children's Ctr., Inc.,* 98 F.3d 1406, 1411 (D.C. Cir.

1996). In assessing good cause, a district court must exercise its discretion in light of the

relevant facts and circumstances of the particular case. *Tavoulareas v. Washington Post* Co., 111

F.R.D. 653 (D.D.C. 1986) (Gasch, J.) (applying *Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 599

(1978) (holding that the assessment of the common law right of access to information is best left

to the discretion of the trial court)). A mere showing that discovery may involve inconvenience

and expense will not meet this threshold requirement. *Lehnert v. Ferris Faculty Ass'n-MEA-*

*NEA,* 556 F. Supp. 316, 318 (W.D. Mich. 1983). Furthermore, if a court were to issue the

protective order, the court must articulate specific facts justifying a protective order since that is

imperative to ensure adequate appellate review. *See Nat'l Children's Ctr.,* 98 F.3d at 1411.

    The defendants have failed to satisfy their burden of demonstrating "good cause" for the

issuance of a protective order. The defendants do not detail the likely contours of the plaintiffs'

fifteen deposition requests from which they seek protection, but rather, simply state that

"[p]roceeding with depoditions [sic] at this time is premature and should be stayed pending

resolution of the dispositive motion now before the Court." Defs.' Mot. for J. on the Pleadings

and/or for Summ. J. at 1. Without a detailed exposition of the nature and scope of the protective

2

order sought, and the likely scope of the plaintiffs' deposition requests, the court is unable to rule

in the defendants' favor – a ruling that would require the court to articulate specific facts

justifying a protective order necessary to ensure adequate appellate review. *See Nat'l Children's*

*Ctr.*, 98 F.3d at 1411. For this reason, the court denies the defendants' motion.[1]

Nevertheless, the court has the inherent authority to manage its docket, *Zenian v. District*

*of Columbia*, 283 F. Supp. 2d 36 (D.D.C. 2003), and must do so here. Though the defendants'

motion for a protective order fails to demonstrate that in the absence of protection the defendants

will suffer a clearly defined and serious injury, *Glenmede Trust Co.*, 56 F.3d at 483, the court is

convinced that the interests of judicial economy are best served with a limitation on the scope of

discovery at this stage in the proceedings to the issues raised in the defendants' Motion for

Judgment.[2] *See Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994)

(holding that "the scope of discovery lies within the district court's discretion"). Following a

period of limited discovery, and a ruling by this court on the defendants' Motion for Judgment,

full discovery shall resume.

Thus, the defendants will make available to the plaintiffs all discovery that is relevant in

mounting a response to the defendants' Motion for Judgment. The court is confident that the

parties will be able to parse the plaintiffs' discovery requests and determine which are relevant to

---

[1] The plaintiffs allege that the defendants are ignoring their discovery obligations. Pls.' Opp'n to Defs.' Mot. for J. on the Pleadings and/or for Summ. J. at 1. The court takes these allegations seriously and will not tolerate any dilatory tactics or attempts at stonewalling. Nevertheless, the court is not convinced that the interests in judicial economy and the orderly administration of case proceedings should be sacrificed as a result.

[2] The plaintiffs argue that there are additional claims which the defendants have not moved to dismiss, therefore warranting continued discovery on those claims. Pls.' Opp'n. at 11-12. The court, in its discretion, will nevertheless stay discovery as to these additional claims pending a ruling on the issues raised in the defendants' Motion for Judgment.

the defendants' Motion for Judgment (e.g. Pls.' Opp'n to Defs.' Mot. for Protective Order, Ex.

A-3, § I) and which pertain to broader issues (e.g. "all documents relating to the imposition of the

population cap required by the consent order in *Campbell v. McGruder*, No. 71-1462[.]" *Id.*, Ex.

A-1, ¶ 1).[3] If the court is called upon to umpire this process, the court will assess costs to the

losing attorney, as per the Standing Order.

Accordingly, for the reasons set forth above, it is this 30th day of September, 2005 hereby

**ORDERED** that the defendants' motion for a protective order is **DENIED**, and it is

**FURTHER ORDERED** that the defendants shall produce all documents that are

responsive to the plaintiffs' discovery requests and relevant to the pending issues raised in the

defendants' dispositive motion, and it is

**FURTHER ORDERED** that the parties shall submit to the court a joint proposed

schedule for the discovery described herein as well as a subsequent briefing schedule to the

defendants' dispositive motion within 10 days of this order.

**SO ORDERED.**


                                                            RICARDO M. URBINA
                                                            United States District Judge

---

[3] The court notes that the defendants' dispositive motion makes evidentiary references. *See* Defs.' Mot. for J. on the Pleadings and/or for Summ. J. at 19 (stating that "there is no evidence that officials at the jail had indication that either plaintiff was under a specific threat or requested protective custody from other inmates"). The defendants have opened the door to these, and perhaps other, specific evidentiary issues. Thus, to the extent that the plaintiffs' discovery requests seek information relevant to these evidentiary issues, the defendants must respond.

*9 (D.D.C. June 29, 2004); *Campbell*, 231 F. Supp. 2d at 7. To show good cause, a party must demonstrate that discovery "would cause a clearly defined and serious injury." *Campbell*, 231 F. Supp. 2d at 7 (citation omitted); *see also Horsewood v. KIDS "R" US*, 1998 WL 526589, at *2 (D. Kan. Aug. 13, 1998) ("To establish good cause, the movant must submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" (quoting *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n.16 (1981))); *Waltzer v. Conner*, 1985 WL 2522, at *1 (S.D.N.Y. Sept. 12, 1985) (same). Although they fail to mention this standard, defendants' proposed "good cause" appears to be that (1) their qualified immunity motion with respect to the individual defendants renders discovery as a whole unnecessary; (2) plaintiffs have not demonstrated a "compelling need" for discovery at this juncture in the case; and (3) depositions at this stage in the litigation would require undue time and expense. All three of these purported justifications are obviously deficient.

I.    *Defendants' Qualified Immunity Arguments Do Not Justify a Protective Order.*

Defendants first assert that discovery should cease "[o]nce a defendant has raised a qualified immunity defense." This argument fails for two reasons. First – and contrary to defendants' position – defendants' qualified immunity arguments raise precisely the type of fact-specific questions about reasonableness and good faith that are subject to discovery.[6] For example, defendants argue that:

> the individually named defendants were entitled to take those
> measures they reasonably believed would not pose or create
> conditions that would result in a serious risk of harm to inmates or
> staff. . . . Given the facts and circumstances known to these

---

[6]    Plaintiffs have responded neither to defendants' dispositive motion nor their motion to stay discovery, and reserve the right to do so should this Court be inclined to consider or order briefing on either or both of those motions.

10

officials at the time of the alleged unconstitutional conduct, they
are protected by qualified immunity . . . . After considering all
these facts, the District officials were confident that the Jail could
safely and securely house the number of offenders that were there.

(Def. Motion for JOP and/or Summary Judgment at 18-19.)  These factual questions – about the

measures taken by the individual defendants, the facts and circumstances known to them at the

time of those measures, and their reasons for those measures in light of these circumstances –

plainly require further discovery to develop a record; they are not the type of pure legal questions

that can be decided without that step.[7]  *See, e.g., Johnson v. Jones*, 515 U.S. 304, 316 (1995)

(factual controversies in constitutional tort cases concerning a defendant's intent are properly

resolved at trial); *Polk v. District of Columbia*, 121 F. Supp. 2d 56, 65 (D.D.C. 2000) (disputed

issues concerning reasonableness and good faith of defendants' action are questions of fact for

trial) (citing *Brown v. Stewart*, 910 F. Supp. 1064, 1071 (W.D. Pa. 1996) and *Calamia v. City of

New York*, 879 F.2d 1025 (2d Cir. 1989)); *see also Rivera-Jimenez v. Pierluisi*, 362 F.3d 87, 93-

95 (1st Cir. 2004) (summary judgment based on qualified immunity inappropriate where parties

disputed such factual questions as the government actor's purpose or motive); *Prokey v. Watkins*,

942 F.2d 67, 73 (1st Cir. 1991) (summary judgment based on qualified immunity improper

where historical knowledge of government actor was genuinely in dispute).

Second, defendants' argument ignores the causes of action that plaintiffs have

brought against the District of Columbia and the individual defendants in their official capacities

as employees of the District – claims that defendants have not moved to dismiss.  Regardless,

---

[7]     The sole case cited by defendants in support of their argument that discovery should be
stayed pending resolution of the qualified immunity issue – *Siegert v. Gilley*, 500 U.S. 226
(1991) – is inapposite.  *Siegert* does nothing more than affirm the decision of the Circuit court to
dismiss before discovery that lawsuit for failure to allege the violation of a clearly established
constitutional right – a purely legal argument that defendants have not even made in their
dispositive motion.  *Siegert*, 500 U.S. at 229-32.

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONALD HARDY, et al.                )
                                    )
              Plaintiffs            )
                                    )
        v.                          )     Case No. 1:07cv00415
                                    )     Judge Richard Roberts
DISTRICT OF COLUMBIA,               )
  et al.                            )
                                    )
              Defendants            )

**O R D E R**

Upon consideration of defendant Steven A. Smith's Motion to Dismiss Plaintiff's

Complaint, Plaintiff's response thereto, and the record herein it is this _____ day of

_____, 2007

**ORDERED** that Steven A. Smith's Motion to Dismiss be and is hereby denied.

_____
Judge Richard W. Roberts
United States District Court
 for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONALD HARDY, et al.              )
                                  )
              Plaintiffs          )
                                  )
        v.                        )        Case No. 1:07cv00415
                                  )        Judge Richard Roberts
DISTRICT OF COLUMBIA,             )
  et al.                          )
                                  )
              Defendants          )

**O R D E R**

Upon consideration of defendant Odie Washington's Motion to Dismiss Plaintiff's

Complaint, Plaintiff's response thereto, and the record herein it is this _____ day of

_____, 2007

     **ORDERED** that Odie Washington's Motion to Dismiss be and is hereby denied.


                                       _____

                                       Judge Richard W. Roberts
                                       United States District Court
                                        for the District of Columbia