## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                              )
RONALD HARDY, et al.,         )
                              )
          Plaintiffs,         )
                              )
          v.                  )     Civil Action No. 07-415 (RWR)
                              )
DISTRICT OF COLUMBIA, et al., )
                              )
          Defendants.         )
                              )
```

## MEMORANDUM OPINION AND ORDER

After allegedly being assaulted by fellow inmates, plaintiffs Denis Garcia and Martell Legrand filed suit against former Director of the D.C. Department of Corrections Odie Washington and former D.C. Jail Warden Steven Smith in both their official and individual capacities, and the District of Columbia, seeking damages under 42 U.S.C. § 1983 for alleged violations of the Fifth and Eighth Amendments.[1]  Defendants Washington and Smith have moved to dismiss the claims against them, insisting that the official capacity claims should be brought solely against the District of Columbia and that they are entitled to qualified immunity from suit.  Because the same claims against Washington and Smith in their official capacities are also

---

[1] Plaintiff Ronald Hardy and defendant Prison Realty Trust, who were respectively a plaintiff and a defendant originally, are no longer parties.  The complaint also asserts negligence claims against the District of Columbia.

-2-

brought against the District of Columbia, they are redundant and will be dismissed as to Washington and Smith.  Because the Fifth Amendment, rather than the Eighth Amendment, applies to pretrial detainees' rights, the plaintiffs' Eighth Amendment claims will be dismissed.  Washington and Smith's motions to dismiss the plaintiffs' Fifth Amendment claims because of qualified immunity will be denied because the plaintiffs have alleged violations of actual Fifth Amendment rights that were clearly established at the time.

BACKGROUND

While incarcerated in the D.C. Jail as pretrial detainees, plaintiffs Garcia and Legrand were each allegedly assaulted, on separate occasions in 2004 and 2005, by inmates[2] who threw scalding liquid on them while they were locked in their jail cells.  (See Compl. ¶¶ 32, 36).  Each plaintiff reports suffering severe burns as a result of the assault against him.  (Id.)  In their complaint, Garcia and Legrand allege that "[n]o prison guard saw, heard, or was present at the time of the assault[s] to supervise, monitor or deter the assault[s.]"  (Id. ¶¶ 33, 37).  The plaintiffs insist that "[d]espite the officials' longstanding awareness of the conditions of confinement at the Jail and the

_____

[2] Garcia alleges an assault by inmate Marquee Venable, "a predatory inmate with a documented history of assaulting other detainees" that included a previous incident of assaulting another inmate "by throwing scalding liquid at him while the inmate was sitting in his cell."  (Compl. ¶¶ 30(1), 32-33.)

-3-

clearly established constitutional requirements for the facility, defendants adopted a custom or policy with respect to the operations of the Jail that was deliberately indifferent to, and recklessly disregarded, the safety and security of the detainees and the inmates housed there."  (<u>Id.</u> ¶ 31.)  Plaintiffs allege that Washington and Smith violated their Fifth and Eighth Amendment rights by failing to protect the plaintiffs from known dangerous conditions, including the threat of violence by other inmates.  In response, Washington and Smith have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint, insisting that it fails to state a claim against them and that they are entitled to qualified immunity from suit.

## DISCUSSION

A complaint may be dismissed under Rule 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) motion is intended to test the legal sufficiency of the complaint." <u>Kingman Park Civic Ass'n v. Williams</u>, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citations omitted).  "'Rule 12(b)(6) is not a device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint. . . .  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  <u>Scott v. District of Columbia</u>,

-4-

Civil Action No. 05-1853 (RWR), 2006 WL 1409770, at *2 (D.D.C. May 23, 2006) (quoting ACLU Foundation of So. Cal. v. Barr, 952 F.2d 457, 467 (D.C. Cir. 1992) (quotations and citations omitted)).  "On review of a 12(b)(6) motion a court 'must treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted) (alteration in original).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  Id.

I.   OFFICIAL CAPACITY CLAIMS

     "Claims brought against government employees in their official capacity are treated as claims against the employing government and serve no independent purpose when the government is also sued."  Scott, 2006 WL 1409770, at *3 (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985); Arnold v. Moore, 980 F. Supp. 28, 36 (D.D.C. 1997); Cooke-Seals v. District of Columbia, 973 F.

-5-

Supp. 184, 187 (D.D.C. 1997)  ("[A]n official capacity suit
against an individual is the functional equivalent of a suit
against the employer[.]")).  Because plaintiffs make claims
against the District of Columbia, the same claims against
Washington and Smith in their official capacities are redundant
and will be dismissed.

II.  EIGHTH AMENDMENT CLAIMS

     "The Eighth Amendment prohibits the government from
inflicting 'cruel and unusual punishment' on prison inmates,
which includes '[a] prison official's 'deliberate indifference'
to a substantial risk of serious harm to an inmate.'"  Powers-
Bunce v. District of Columbia, 479 F. Supp. 2d 146, 152-53
(D.D.C. 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 828
(1994)).  However, "the Amendment's prohibition applies only to
persons who are subject to 'punishment' by the government, which
the Supreme Court has defined to mean persons against whom the
government 'has secured a formal adjudication of guilt' . . .
[and] does not apply to pretrial detainees . . . who have not
been adjudicated guilty of any crime."  Id. at 153 (quoting Bell
v. Wolfish, 441 U.S. 520, 535 n.16 (1979)).  Instead, "detainees
have an independent due-process right under the Fifth and
Fourteenth Amendments to be free from [detaining] officials'
'deliberate indifference'" to detainees' needs and safety.  Id.;
see City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)

-6-

(recognizing that a person apprehended by the police in need of medical care has a due process right to be provided care). Because the plaintiffs represent in their complaint that they were pretrial detainees when the alleged harms occurred (see Compl. at ¶¶ 46, 51), they "had no Eighth Amendment rights that could have been violated." Powers-Bunce, 479 F. Supp. 2d at 153. Accordingly, the motions to dismiss the plaintiffs' Eighth Amendment claims against Washington and Smith will be granted.

III. QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials 'from [personal] liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see Owen v. City of Independence, Mo., 445 U.S. 622, 652-54 (1980) (discussing qualified immunity as protecting public officials from personal liability)). "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability[.]'" Pearson, 129 S. Ct. at 815, 818 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Whether a defendant is protected by qualified immunity should be resolved at the "earliest possible stage" so that the "costs and expenses of trial are avoided where the

-7-

defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01
(2001); <u>see</u> <u>Pearson</u>, 129 S. Ct. at 815.

     To determine if an official is protected by qualified
immunity and therefore entitled to dismissal of the claims
against him, a court must ask "whether the plaintiff has alleged
the deprivation of an actual constitutional right," and "whether
that right was clearly established at the time of the alleged
violations." <u>Int'l Action Ctr. v. United States</u>, 365 F.3d 20, 24
(D.C. Cir. 2004) (quotations and citations omitted).[3]  The second
inquiry "must be undertaken in light of the specific context of
the case, not as a broad general proposition. . . .  'The
contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing
violates that right.'" <u>Saucier</u>, 533 U.S. at 201-02 (quoting
<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).  The question
is whether "it would be clear to a reasonable [official] that his
conduct was unlawful in the situation he confronted." <u>Id.</u>  "It
is no defense that an official was unaware of a law, as a
'reasonably competent public official should know the law
governing his conduct.'" <u>Barham v. Ramsey</u>, 338 F. Supp. 2d 48,
55 (D.D.C. 2004) (quoting <u>Harlow</u>, 457 U.S. at 818-19).  "If the
officer's mistake as to what the law requires is reasonable,

_____

     [3] Either prong of the qualified immunity test may be analyzed
first.  <u>Pearson</u>, 129 S. Ct. at 818.

-8-

however, the officer is entitled to the immunity defense."
<u>Saucier</u>, 533 U.S. at 205.

Plaintiffs have brought constitutional claims under 42
U.S.C. § 1983 against Washington and Smith in their individual
capacities.  "[I]n order to state a claim under § 1983, . . . a
plaintiff must allege that the defendant violated a right
protected by the Constitution" or a federal statute.  <u>Powers-
Bunce</u>, 479 F. Supp. 2d at 152; <u>see</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S.
273, 279 (2002) (noting "that § 1983 actions may be brought
against state actors to enforce rights created by federal
statutes as well as by the Constitution").[4]  "'As a general rule,
government officials may be sued in their individual capacities
for constitutional violations only if they are directly
responsible for the alleged violations.'"  <u>Banks v. York</u>, 515 F.
Supp. 2d 89, 100 (D.D.C. 2007) (quoting <u>Caldwell v. Hammonds</u>, 53
F. Supp. 2d 1, 9 (D.D.C. 1999)).  In their complaint, plaintiffs
allege that Washington and Smith acted to violate plaintiffs'
Fifth Amendment rights while they were pretrial detainees in D.C.
Jail.  "The question under Rule 12(b)(6) is whether the facts
alleged, if shown to be true, would establish that [d]efendants
violated rights guaranteed by th[at] Amendment[]."  <u>Powers-Bunce</u>,
479 F. Supp. 2d at 152.

---

[4] Section 1983 applies to District of Columbia officials.  42
U.S.C. § 1983.

-9-

"While a convicted prisoner is entitled to protection only against 'cruel and unusual' punishment [under the Eighth Amendment], a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing City of Revere, 463 U.S. at 244). Accordingly, since before the plaintiffs' alleged injuries in 2004 and 2005, "[c]ourts have consistently held that [the] right belonging to pretrial detainees [under the Fifth Amendment] is at least as great as the analogous Eighth Amendment right[.]" Powers-Bunce, 479 F. Supp. 2d at 153 (emphasis added and internal quotation marks omitted); see City of Revere, 463 U.S. at 244 (concluding that "the due process rights of a person [in police custody] are at least as great as the Eighth Amendment protections available to a convicted prisoner"); Barber v. City of Salem, 953 F.2d 232, 235 (6th Cir. 1992) (holding that "the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights" and applying the Eighth Amendment "deliberate indifference" standard to conduct toward detainee). Because a pretrial detainee's rights under the Fifth Amendment are at least as great as those afforded to a convicted prisoner under the Eighth Amendment, applying the Eighth Amendment "deliberate indifference" standard to measure whether the plaintiffs have

-10-

alleged a violation of their clearly established Fifth Amendment
rights is appropriate.

Under the Eighth Amendment, prisoners have a right to
"humane conditions" and prison officials have a duty to "'take
reasonable measures to guarantee the safety of inmates,'" Farmer,
511 U.S. at 833 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27
(1984), which includes "'protect[ing] prisoners from violence at
the hands of other prisoners.'" Id. (quoting Cortes-Quinones v.
Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)).  However,
"[p]rison officials cannot be held answerable every time an
inmate in an overcrowded prison commits an act of violence[.]"
Marsh v. Barry, 824 F.2d 1139, 1145 (D.C. Cir. 1987).  For a
prisoner to succeed on a failure-to-protect claim, he must show
(1) "that he is incarcerated under conditions posing a
substantial risk of serious harm" and (2) that a prison official
acted with "deliberate indifference" to protect the prisoner from
that harm.  Farmer, 511 U.S. at 834.

Here, the plaintiffs allege a history pre-dating their
detention of inadequate security staffing and monitoring capacity
in overcrowded settings, abandoned security posts, and violence
by predatory inmates in unguarded cellblocks causing injuries and
fatalities.  (See Compl. ¶¶ 28, 30.)  They also allege that
before the scalding attacks that injured the plaintiffs, Garcia's
very assailant, Venable, committed a similar scalding attack

against an inmate in a cell using water heated in an unguarded microwave.  (Id. ¶ 30(l).)  The plaintiffs contend that the locations where their own assaults occurred were inadequately staffed with corrections officers and resulted in the assaults taking place without any corrections officers in the vicinity to witness the incidents.  (See id. ¶¶ 33, 37.)  These allegations amply plead conditions of detention that "pos[e] a substantial risk of serious harm."  Farmer, 511 U.S. at 834; see also Benner v. McAdory, 34 F. App'x. 483, 485 (7th Cir. 2002) (finding a substantial risk of serious harm in an instance where scalding water was hurled at inmate plaintiff by an fellow inmate who had previously committed a similar assault); see also Paradis v. Blair, No. 1:07-CV-94, 2007 WL 3223222, at *2 (D. Vt. Oct. 29, 2007) (finding that plaintiff, at whom another prisoner had thrown scalding water, had sufficiently plead "substantial risk" by noting previous similar "inmate-on-inmate scalding incidents" and "routine access to pots of scalding hot water"); Edmonds v. Mahoning Cty., No. 4:04CV2211, 2005 WL 1076113, at *4 (N.D. Ohio May 5, 2005) (same).  But see Harris v. Jones, Civil Action 97-0191-BH-M, 1999 U.S. Dist. LEXIS 3314, at *25 (S.D. Ala. Feb. 3, 1999) (finding that plaintiff had not established "incarcerat[ion] under conditions that presented a substantial risk of serious harm" where "the only evidence of harm alleged was hot water thrown onto him").

-12-

For the second part of the <u>Farmer</u> test, a plaintiff must show that the defendant had "subjective" knowledge of the risk that he then disregarded.  <u>Farmer</u>, 511 U.S. at 837; <u>Powers-Bunce</u>, 479 F. Supp. 2d at 156.  In other words, "[an] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837.  In appropriate situations, subjective "knowledge 'can be inferred from the obviousness of the risk.'"  <u>Powers-Bunce</u>, 479 F. Supp. 2d at 156 (quoting <u>Payne for Hicks v. Churchich</u>, 161 F.3d 1030, 1042 (7th Cir. 1998)).

The plaintiffs allege that "Washington and Smith were at the top of the chain of command" at the D.C. Jail and "possessed complete knowledge of the long history of [c]onstitutional violations at the D.C. Detention Facility and of current . . . continuing security problems leading to inmate injuries."  (Pls.' Opp'n at 3, 5.)  In their complaint, they allege that the defendants' knowledge of the "substantial and unreasonable risk to detainee and inmate safety stemmed from identified

> court orders, studies, technical and expert reports
> that were provided to the District, testimony and
> documents generated at City Council oversight hearings,
> lawsuits filed against the District and CTF,
> settlements entered into by the District, adverse
> verdicts delivered against the District by juries, a
> long line of inmate assaults at the Jail, and by other
> means.

-13-

(Compl. ¶ 31.)  For example, the plaintiffs contend that on the day before Garcia's March 2, 2004 assault, both Washington and Smith were present at a D.C. Council hearing at which testimony described significant and multiple instances of violence in unguarded locations occurring in the jail since 2002.  (Id. ¶ 30(n).)  In addition, the plaintiffs point to the previous scalding assault by the same inmate who scalded Garcia as evidence of the particular risk to inmates of an assault by thrown scalding liquid.  (See id. ¶ 30(l).)  The plaintiffs further contend that, despite this knowledge, the defendants refused to take reasonable measures to fulfill their duty to protect inmates, such as properly screening pretrial detainees, ensuring adequate staffing at the jail, installing metal detectors, and conducting frequent "shakedowns" of inmates and their facilities.  (See id. ¶¶ 24-27).  Because the plaintiffs have alleged that Washington and Smith knowingly disregarded a substantial risk of serious harm of which they were aware, plaintiffs have adequately alleged a violation of their Fifth Amendment right under a failure-to-protect theory.

Inadequate training or supervision also may serve as the basis for § 1983 liability "where the failure to train amounts to deliberate indifference[.]"  City of Canton v. Harris, 489 U.S. 378, 388 (1989).

"[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or

-14-

> different training is so obvious, and the inadequacy so
> likely to result in the violation of constitutional
> rights, that the [officials] can reasonably be said to
> have been deliberately indifferent to the need."

Harvey v. Brown, Civil No. 06-1891(RMB), 2007 WL 2893193, at *6

(D.N.J. Sept. 28, 2007) (quoting Canton, 489 U.S. at 390).  "In

order to succeed on this theory, however, [plaintiffs] must

demonstrate that the deliberate conduct alleged was the 'moving

force' behind the injury."  Id. (citing Bd. Of Cty. Comm'rs of

Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)).

"The deliberate indifference standard similarly applies to

the failure to supervise analysis."  Id.  Plaintiff must show

"that the official 'was responsible for supervising the

wrongdoer; that a duty to instruct the subordinate to prevent

unconstitutional harm arose from the surrounding circumstances;

and that, as a result of the official's failure to instruct, the

plaintiff was harmed[.]'"  Banks, 515 F. Supp. 2d at 114 (quoting

Haynesworth v. Miller, 820 F.2d 1245, 1262 (D.C. Cir. 1987)).  On

the other hand, because deliberate indifference requires the

official to have subjective knowledge of the substantial risk of

harm, the D.C. Circuit has held that supervisory liability cannot

be applied "absent any allegation that the supervisors in

question 'had actual or constructive knowledge of past

transgressions or that the supervisors were responsible for or

aware of clearly deficient training."  Id. (citing Int'l Action

Ctr., 365 F.3d at 28).

-15-

Here, the plaintiffs allege that Smith and Washington were deliberately indifferent to the "negligent supervision of correctional officers" and "lack of staff training[,]" and that such deliberate indifference "directly and proximately caused plaintiffs' injuries[.]"  (Compl. ¶¶ 47-49, 53, 59-65.)  As is discussed above, the plaintiffs present facts suggesting that defendants, as officials at the top of the "chain of command" at the D.C. Jail, "had been aware [of the issues] for many years and . . . they had been advised by both courts and experts to act on numerous occasions."  (Id. ¶ 56.)  For example, plaintiffs allege that at the March 1, 2004 D.C. Council hearing that Washington and Smith attended, the testimony warned that significant injuries and assaults occurred repeatedly either when guards abandoned their posts or "when housing unit posts were left unstaffed."  (Id. ¶ 30(n).)  A pattern of abandoned or unstaffed posts under the circumstances plaintiffs describe could reflect training or supervision failures.  These allegations, construed liberally in plaintiffs' favor, are sufficient to state a claim for a violation of plaintiffs' Fifth Amendment rights, insofar as

-16-

the claim relates to defendants failure to train and supervise.[5]
See Banks, 515 F. Supp. 2d at 115.

Thus, the plaintiffs have adequately alleged violations of
their Fifth Amendment rights.  In addition, the plaintiffs' Fifth
Amendment rights were clearly established at the time of the
events in question.  Prior to the time of the plaintiffs'
detention in the jail, the Supreme Court had expressly identified
a prison official's duty to take reasonable precautions "'to
protect prisoners from violence at the hands of other
prisoners[,]'" Farmer, 511 U.S. at 833 (quoting Cortes-Quinones,
842 F.2d at 558), by "'tak[ing] reasonable measures to guarantee
the safety of inmates[.]'"  Id. at 832 (quoting Hudson, 468 U.S.
at 526-27).  In light of this explicit duty, Washington and Smith
should have known that any deliberate failure to take reasonable
measures to protect the plaintiffs from the known risk of
scalding injuries, caused either by inmate Venable, or another
inmate employing similar means, was unlawful and violated the
plaintiffs' rights.  Accordingly, because the plaintiffs' right
to be reasonably protected from violence caused by fellow inmates
was clearly established at the time the plaintiffs were injured,

---

[5] "To the extent that plaintiff[s] seek[] to hold defendants
[] liable for the unconstitutional actions or omissions of
[their] subordinates on a theory of respondeat superior, however,
such a theory cannot survive." Banks, 515 F. Supp. 2d at 101-02
(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978);
Cameron v. Thornburgh, 983 F.2d 253 (D.C. Cir. 1993)).

-17-

Washington and Smith's motion to dismiss plaintiffs Fifth Amendment claims against them due to the qualified immunity they invoke will be denied.

CONCLUSION AND ORDER

Because the plaintiffs make official capacity claims against Washington and Smith that are identical to those made against the District of Columbia, the official capacity claims are redundant and will be dismissed.  The plaintiffs' Eighth Amendment claims will be dismissed because the Eighth Amendment did not protect the plaintiffs as pretrial detainees.  However, the plaintiffs have stated violations of a Fifth Amendment right to be detained in humane conditions that was clearly established at the time of the alleged violation, and Washington and Smith's motions to dismiss these Fifth Amendment claims on the basis of qualified immunity will be denied.  Accordingly, it is hereby

ORDERED that Washington and Smith's motions to dismiss [9, 17] be, and hereby are, GRANTED IN PART and DENIED IN PART. Washington and Smith's motions to dismiss the plaintiffs' Eighth Amendment claims are GRANTED.  The defendants' motion to dismiss the plaintiffs' Fifth Amendment claims are DENIED.

SIGNED this 6th day of March, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge